IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

SCOTT EAMES,

        Plaintiff,

   v.

NILE,

        Defendant.

CASE NO.   2:25-cv-00013-HEA

**DEFENDANT NILE'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

4913-0955-7110, c 1

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................. 1

Statement of Allegations ............................................................................................. 2

I.  Eames' Initial Allegations Regarding His Purported Agreement With Nile ............. 3

II. Eames' Revised Allegations Regarding His Alleged Agreement With Nile ............... 4

III. Eames' Allegations Regarding The Allegedly False "Posts" And His Removal From Nile ............................................................................................................ 4

Argument ..................................................................................................................... 5

I.  Standard Of Review .............................................................................................. 5

II. Eames Cannot Properly Allege A Claim For Breach Of Contract ........................... 6

    A.  The Agreement Is Impermissibly Indefinite ................................................. 6

    B.  The Agreement Lacks A Duration And Was Thus Terminable At Will ............... 8

III. Eames Fails To State A Claim For Unjust Enrichment .......................................... 11

    A.  Eames Expressly Tethers His Unjust Enrichment Claim To His Alleged Agreement ................................................................................................. 11

    B.  Eames Does Not (And Cannot) Allege That Nile Appreciated Any Benefit ....... 12

    C.  Eames Cannot Allege That Nile Retained Any Benefit Under Unjust Circumstances ............................................................................................ 12

    D.  Eames Seeks Relief That Is Not Available On A Theory Of Unjust Enrichment ................................................................................................. 13

IV. Dismissal Should Be With Prejudice .................................................................... 14

CONCLUSION .......................................................................................................... 15

4913-0955-7110, v 1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*,
714 F.3d 1069 (8th Cir. 2013) ........................................................................................12

*Am. Standard Ins. Co. of Wisconsin v. Bracht*,
103 S.W.3d 281 (Mo. Ct. App. 2003)..........................................................................11, 12

*Around The World Importing, Inc. v. Mercantile Tr. Co.*,
795 S.W.2d 85 (Mo. Ct. App. 1990)..................................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................5

*Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*,
2025 WL 35003 (S.D.N.Y. Jan. 6, 2025) .........................................................................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................5

*Bell v. Allstate Life Ins. Co.*,
160 F.3d 452 (8th Cir. 1998) ...........................................................................................14

*Casazza v. Kiser*,
313 F.3d 414 (8th Cir. 2002) ...........................................................................................10

*Crew v. Imagine Sch., Inc.*,
2008 WL 5105073 (E.D. Mo. Dec. 1, 2008) .....................................................................9

*D'Agirbaud v. Kam*,
2020 WL 4370879 (D. Haw. July 30, 2020).......................................................................7

*Doe v. St. Louis Univ. Sch. of Med.*,
2013 WL 1305825 (E.D. Mo. Mar. 28, 2013) ....................................................................7

*Echols v. CSX Transportation, Inc.*,
2017 WL 2569734 (E.D. Va. June 13, 2017), *aff'd*, 700 F. App'x 267 (4th Cir. 2017) ...........7

*ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*,
355 F. Supp. 3d 785 (D. Minn. 2019)..........................................................................9, 15

*Fedynich v. Massood*,
342 S.W.3d 887 (Mo. Ct. App. 2011)..................................................................................6

ii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Foam Supplies, Inc. v. The Dow Chem. Co.*,
 2006 WL 2225392 (E.D. Mo. Aug. 2, 2006)................................................................10

*Franklin v. Pinnacle Ent., Inc.*,
 2012 WL 6870447 (E.D. Mo. Aug. 9, 2012)..................................................................7

*Gateway Exteriors, Inc. v. Suntide Homes, Inc.*,
 882 S.W.2d 275 (Mo. Ct. App. 1994)............................................................................7

*Hoffmeister v. Kranawetter*,
 407 S.W.3d 59 (Mo. Ct. App. 2013)............................................................................13

*Holmes v. Torguson*,
 41 F.3d 1251 (8th Cir. 1994) .......................................................................................14

*Howard v. Turnbull*,
 316 S.W.3d 431 (Mo. Ct. App. 2010)..........................................................................11

*Jackson v. Focus Features LLC*,
 2025 WL 1706717 (E.D. Mo. June 18, 2025) ...............................................................5

*Muller v. Blue Diamond Growers*,
 683 F. Supp. 3d 933 (E.D. Mo. 2023)..........................................................................12

*Mungai v. Univ. of Minnesota*,
 141 F.4th 959 (8th Cir. 2025) ........................................................................................5

*Outdoor Cent., Inc. v. GreatLodge.com, Inc.*,
 643 F.3d 1115 (8th Cir. 2011) .....................................................................................13

*Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*,
 844 S.W.2d 508 (Mo. Ct. App. 1992)..........................................................................13

*Reitz v. Nationstar Mortg., LLC*,
 954 F. Supp. 2d 870 (E.D. Mo. 2013)............................................................................8

*Rishikof v. Mortada*,
 70 F. Supp. 3d 8 (D.D.C. 2014) ...................................................................................10

*Schlictig v. Reichel*,
 770 S.W.2d 493 (Mo. Ct. App. 1989)............................................................................8

*Smith v. Hammons*,
 63 S.W.3d 320 (Mo. Ct. App. 2002)..............................................................................6

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Superior Concrete Accessories v. Kemper*,
284 S.W.2d 482 (Mo. 1955) ......................................................................................8

*Usenko on behalf of SunEdison Semiconductor Ltd. v. SunEdison Semiconductor LLC*,
2018 WL 999982 (E.D. Mo. Feb. 21, 2018), *aff'd sub nom. Usenko v. MEMC LLC*,
926 F.3d 468 (8th Cir. 2019) ..................................................................................14

*Vess Beverages, Inc. v. Paddington Corp.*,
886 F.2d 208 (8th Cir. 1989) ..................................................................................10

*Whitney v. Guys, Inc.*,
700 F.3d 1118 (8th Cir. 2012) ...................................................................................5

*Williams v. Alpha Terrace Dev. Corp.*,
2012 WL 3064269 (E.D. Mo. July 27, 2012) ...........................................................8

*Yoest v. Farm Credit Bank of St. Louis*,
832 S.W.2d 325 (Mo. Ct. App. 1992).....................................................................10

*Young v. St. John's Mercy Health Sys.*,
2011 WL 9155 (E.D. Mo. Jan. 3, 2011) ....................................................................9

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................1

iv

Defendant Nile ("Nile") respectfully submits this memorandum of law in support of his motion to dismiss the Second Amended Complaint (Doc. 77, "SAC") of Plaintiff Scott Eames ("Eames") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Introduction

This lawsuit is nothing but a misguided attempt by Eames to extract an unwarranted windfall from Nile, all because some allegedly unknown individual made some posts accusing Eames of criminal misconduct. For whatever reason, Eames does not seem to be concerned with disproving the allegations of misconduct or seeking relief from the individual that actually posted the accusations of which Eames complains. Rather, he has chosen to sue Nile – a band of working musicians with a niche following that has been built up over decades of hard work – based on flawed legal theories, seeking outsized relief for claims that have no basis in reality. Eames, who worked with Nile, on and off, for just two years seems to believe he is entitled to a full third of Nile's revenues, irrespective of whether Eames did anything to contribute to such revenues. But that claim is fundamentally implausible, and none of Eames' purported causes of action are properly stated.

Importantly, this is the second time Nile has moved to dismiss Eames' claims. In response to Nile's prior motion, Eames sought leave to amend his complaint, which the Court granted. While it is true that Eames has narrowed the overbroad claims and parties at issue in this lawsuit – he initially sued five different defendants, and asserted twenty-five causes of action – he persists in asserting a claim against Nile for breach of contract, and has even added an additional claim for unjust enrichment. But it is the manner in which Eames amended many of his factual allegations that is truly telling.

Notably, Nile's prior motion to dismiss raised numerous issues with Eames' breach of contract claim. Among other things, Nile's prior motion established that Eames had improperly alleged the existence of a purported oral argument missing essential terms, and that, to the extent any such oral agreement did exist, it was either terminable at will due to its indefinite duration, or was otherwise barred by the statute of frauds. Those arguments were premised on various

1

4913-0955-7110, v 1

admissions in Eames' prior complaint, including that the alleged agreement was oral, and that he was claimed that any agreement entitled Eames to be a "permanent" member of Nile until the band ceased performing. In his SAC, however, Eames – without explanation – jettisons and contradicts those express allegations, apparently hoping to overcome a motion to dismiss on the basis of obfuscation alone. But Courts routinely recognize that such bad faith amendments are impermissible. Thus, the same reasons why Eames had failed to state a claim for breach of contract in his prior complaint are fully applicable to his SAC as well. And this is true even if Eames' new, contradictory allegations are considered.

Nor has Eames sufficiently alleged a plausible factual basis for his new cause of action for unjust enrichment. In that regard, Eames fails to allege multiple essential elements of an unjust enrichment claim, including that Nile actually appreciated any benefit conferred by Eames, or that Nile retained any such benefit in an unjust manner. Rather, Eames makes only vague allegations of contributing in some undisclosed fashion to some undisclosed music, without any articulation of how those contributions benefited Nile. Eames' unjust enrichment claim also fails for another reason – Eames himself alleged in his prior complaint that he was ***paid*** for the services he allegedly performed while working with Nile. Once again, those admissions are mysteriously absent from Eames' SAC, but the Court is fully permitted to look past Eames' weak attempts to disguise the fatal flaws in his baseless claims against Nile.

Nile has already invested a great deal of time and resources in defending against Eames' baseless claims. Given Eames' continuing failure to state a claim, his SAC against Nile should be dismissed, with prejudice.

### Statement of Allegations[1]

As noted above, Eames, in filing a SAC to attempt to avoid dismissal, has attempted to both eliminate factual allegations that defeat his claims as a matter of law, and to assert new factual allegations that directly contradict those in both his FAC. As such, and to provide full

---

[1] These allegations are taken from Eames' pleadings, and the validity of same are not conceded.

4913-0955-7110, v. 1

context to the Court, a summary of the allegations previously asserted by Eames are set forth below, followed by a summary of the alternative reality presented in Eames' SAC. Where allegations have not changed, multiple citations are included.

## I.     Eames' Initial Allegations Regarding His Purported Agreement With Nile

Eames claims to be a "renowned musician" (FAC ¶ 14; SAC ¶ 8) that performed with the band Nile at some points in time between mid-2021 through October 26, 2023. FAC, ¶ 20; SAC ¶ 10.

According to Eames, at some unidentified period of time, he had "multiple discussions" with Nile regarding Eames' "permanent involvement with the band[,]" which Eames claims led to an agreement "that Eames would serve as a permanent member of NILE until [Karl Sanders, a member of Nile] eventually retired and the band ceased performing" (the "Agreement"). FAC ¶¶ 22-24. Eames previously did not allege any particular terms of the Agreement (e.g., what Eames was actually obligated to do under the Agreement), but generally claimed he "was to receive: 1) tour compensation on a weekly basis; 2) revenue from the release of the album and sales; 3) royalties on future uses of the album, album streaming, and merchandise sales; and 4) endorsement and advertising revenue." FAC ¶ 33. Eames did (and does) not allege any information as to how these amounts were to be calculated or paid. Eames also expressly alleged that the purported Agreement was oral, not written. FAC ¶ 72 ("Defendant NILE and Eames [*sic*] 'Agreement' constitutes an oral contract … ."); *see also* Compl. (Doc. 1) ¶ 54 ("Defendant NILE and Eames orally agreed that Eames would perform as a member of NILE … .").

Further, Eames alleged that "[a]s part of the Agreement, in November 2022, Eames was moved to stage-front center, performed as the Frontman, main-vocalist, and guitarist, and ***received $850/week in compensation***." FAC ¶ 25 (emphasis added); Compl. ¶ 21. He also alleges that Eames "***was paid*** to help train and prepare a new bassist for NILE in preparation for its upcoming tour." FAC ¶ 26 (emphasis added). Beyond that, Eames alleged that he "performed pre-production vocals, sent lyrics and songs to practice/rehearse for future recordings, created

3

guitar solo videos to share with NILE for review, and traveled to South Carolina to record vocals and guitar for the [Nile's forthcoming album, 'The Underworld Awaits Us All" ("Underworld")]." FAC, ¶ 28; Compl., ¶ 24.

## II.    Eames' Revised Allegations Regarding His Alleged Agreement With Nile

In his SAC, Eames attempts to obfuscate or alter many of his prior factual allegations, perhaps in recognition that those allegations defeat his claims entirely. Notably, Eames' SAC no longer references the Agreement as being "oral," or the Agreement allegedly entitling him to be a "permanent" member of the band Nile until it ceased performing. *Compare* FAC ¶ 72 *with* SAC ¶ 38 (alleging there was an agreement, but failing to mention that the agreement was oral). He also omits the allegations that he was paid to train a bassist for Nile. *Compare* FAC ¶ 25 *with* SAC ¶ 13. Similarly, Eames in his SAC removes his express allegation that he did receive $850/week in compensation for his alleged services after November 2022, contradictorily asserting now that he was unpaid. *Compare* FAC ¶ 25 *with* SAC ¶¶ 12, 46. Eames also contradicts his earlier allegations that he was meant to be a member of the band until Nile ceased performing, by claiming instead that he was "to perform on NILE's Underworld tours as a member of NILE following the album's release until October 11, 2025 (the last scheduled tour date)." SAC ¶ 17.

## III.    Eames' Allegations Regarding The Allegedly False "Posts" And His Removal From Nile

Eames further alleges, that on or about October 23, 2023, "a fake article was posted on internet websites Medium.com and NewsBreak.com which falsely stated that Eames had been 'criminally charged in Moberly, Randolph County. MO, with multiple counts of battery and sexual assault, claiming authorities were notified of the crimes and that multiple women, including a minor, had reported years of domestic violence and abuse'" (the "Posts"). SAC ¶ 20. Eames further alleges that, on October 24, 2023 – just one day after the Posts were published – he discussed the Posts with Nile. *Id.*, ¶ 30. Eames then alleges that Nile later announced a band lineup that did not include Eames. SAC, ¶ 32.

4

Based on these allegations, Eames now asserts two causes of action against Nile, for breach of contract and for unjust enrichment.

## Argument

None of Eames' causes of action against Nile are sufficiently alleged.

### I.    Standard Of Review

"To survive a motion to dismiss, the complaint must provide enough facts to state a claim that is plausible on its face." *Mungai v. Univ. of Minnesota*, 141 F.4th 959, 963 (8th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff achieves facial plausibility when the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining if well-pleaded factual allegations state a 'plausible claim for relief' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Jackson v. Focus Features LLC*, 2025 WL 1706717, at *2 (E.D. Mo. June 18, 2025) (citation omitted). A plaintiff's factual allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). "The well-pleaded facts must establish more than a 'mere possibility of misconduct.'" *Jackson*, 2025 WL 1706717, at *2 (quoting *Iqbal*, 556 U.S. at 679).

While a Court ruling on a motion to dismiss "must liberally construe a complaint in favor of the plaintiff" and "grant all reasonable inferences in favor of the nonmoving party," "if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim." *Jackson*, 2025 WL 1706717, at *2 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Although courts must accept well-pleaded factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

4913-0955-7110, v. 1

## II.      Eames Cannot Properly Allege A Claim For Breach Of Contract

Eames' first cause of action against Nile is for breach of a purported contract that Eames refers to as the "Agreement." SAC ¶¶ 38-43. Eames claims that he was to perform with of Nile during tours (SAC ¶ 17) and that he worked on some unidentified music as part of the Agreement (*Id.*, ¶ 14). He further alleges that, per the Agreement, he was to receive tour compensation on a weekly basis, plus ***a full third*** of net revenue from the release of the album and sales, net royalties on future uses of the album and album streaming, merchandise sales, and endorsement and advertising revenue – all despite not alleging that anything he supposedly did even made it onto the Underworld album. *Id.*, ¶ 18.

Regardless, Eames' breach of contract claim fails for at least two reasons:  (i) the terms of the alleged Agreement are too indefinite to be enforceable, and (ii) to the extent there was any agreement, it lacked any statement of duration and was thus terminable at will.  And were Eames to try to argue the Agreement had a definite duration, it would be barred by the statute of frauds.

### A.      The Agreement Is Impermissibly Indefinite

"The nature and extent of the contract's essential terms must be certain or capable of certain interpretation" and "[n]o contract is formed where the terms of the agreement are unduly uncertain or indefinite." *Fedynich v. Massood*, 342 S.W.3d 887, 891 (Mo. Ct. App. 2011). "If the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement"; "[n]egotiations or preliminary steps towards a contract do not constitute a contract." *Smith v. Hammons*, 63 S.W.3d 320, 325 (Mo. Ct. App. 2002) (citation omitted).

Here, Eames' allegations omit any reference to specific terms of the Agreement, rendering it impossible to determine how any party was meant to perform under the Agreement. But "under Missouri law 'an oral contract will not be found unless the parties have reached an

6

understanding as to *all* the essential terms of the agreement.'"[2] *Franklin v. Pinnacle Ent., Inc.*, 2012 WL 6870447, at *9 (E.D. Mo. Aug. 9, 2012) (emphasis in original) (citation omitted). Further, regardless of the type of agreement, "[a] party 'fails to state a claim for breach of contract [if] it does not set out [the claimant's] rights or [the defendant's] obligations under the contract.'" *Doe v. St. Louis Univ. Sch. of Med.*, 2013 WL 1305825, at *13 (E.D. Mo. Mar. 28, 2013) (citation omitted). In his SAC, Eames is entirely vague as to what his purported obligations were, other than to generally "perform" on the Underworld album, without any allegations of what that performance was meant to consist, how minimal or extensive it was required to be, or how any party was to be able to determine whether any performance was satisfactory. Eames' allegations regarding the substance of his alleged performance underscore this indefiniteness. For example, Eames alleges he "created and collaborated" on music or "recorded guitar solo videos" (SAC ¶ 14), but there is no allegation setting forth what he actually did, what actual music he worked on, or how it in any way related to the actual Underworld album that was released long after Eames parted ways with Nile. What Eames seems to be claiming is that, so long as he did *something* – anything really – related to the Underworld album, Nile was obligated to accept it, and he was entitled to *one third* of Nile's income in any way relating to album. In short, Eames' own allegations demonstrate an utter lack of definiteness as to the scope of Eames' required performance – clearly an essential term of the alleged Agreement – rendering that Agreement unenforceable. *Cf. Gateway Exteriors, Inc. v. Suntide Homes, Inc.*, 882 S.W.2d 275, 280 (Mo. Ct. App. 1994) (contract unduly uncertain and indefinite where "there was only a representation that plaintiff would do *some* work" (emphasis in original)).

---

[2] While the current SAC does not allege whether the Agreement was written or oral, but the Court is entitled to consider Eames' multiple prior admissions that the alleged Agreement was oral. *See, e.g.*, *D'Agirbaud v. Kam*, 2020 WL 4370879, at *4 n.7 (D. Haw. July 30, 2020) ("Although Plaintiff omits these facts in the FAC, the Court is not required to disregard contradictory evidence in a verified prior complaint or accept inconsistent facts alleged in an amended pleading."); *Echols v. CSX Transportation, Inc.*, 2017 WL 2569734, at *6 (E.D. Va. June 13, 2017), *aff'd*, 700 F. App'x 267 (4th Cir. 2017) (granting motion to dismiss and denying leave to amend where proposed amended complaint sought to reverse prior admissions "so as to avoid having his suit barred by statute of limitations").

7

As for consideration, Eames refers only in the vaguest terms to a purported entitlement to a full ***one third*** of "revenue" and "royalties" derived from the Underworld world and tour, as well as undefined "endorsement and advertising revenue" (SAC ¶ 18) – an allegation that is utterly implausible, because it would be unfathomable for a band like Nile that has been in existence for more than 30 years and released 12 albums (*id.*, ¶ 9) to offer one third of all revenue to someone who had been with the band for less than a year at the time of the alleged Agreement. In any event, Eames still fails to allege anything about how that revenue was to be calculated, when any amounts were to be paid, or how long those royalties were to be paid. *See Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 887–88 (E.D. Mo. 2013) (dismissing breach of contract claim where alleged contract lacked essential terms "such as the interest rate, the loan term, the new principal amount, and most importantly, the new permanent monthly payment amount"); *Around The World Importing, Inc. v. Mercantile Tr. Co.*, 795 S.W.2d 85, 90 (Mo. Ct. App. 1990) ("If the content of an agreement is unduly uncertain and indefinite, no contract is formed.").

As the Agreement alleged by Eames is almost entirely silent as to its essential terms, it is unenforceable and cannot sustain a breach of contract cause of action. *See Schlictig v. Reichel*, 770 S.W.2d 493, 495 (Mo. Ct. App. 1989) (dismissing breach of contract claim where "[t]he allegations fail to apprise the court of the subject matter of the contract or the nature of the parties' agreement and obligations thereunder.").

B.       The Agreement Lacks A Duration And Was Thus Terminable At Will

"It is the general rule in … Missouri … that contracts for an indefinite period of time may be terminated at the will of either party." *Superior Concrete Accessories v. Kemper*, 284 S.W.2d 482, 409 (Mo. 1955); *see also Williams v. Alpha Terrace Dev. Corp.*, 2012 WL 3064269, at *4 (E.D. Mo. July 27, 2012) ("Absent an employment contract with a 'definite statement of duration, ... an employment at will is created.'") (citation omitted). Here, Eames admitted in his prior pleadings that the Agreement – which was essentially an agreement to be employed as a

8

performer with the band – lacked any durational limit, by alleging that the Agreement contemplated "that Eames would serve as a permanent member of NILE until Sanders eventually retired and the band ceased performing." FAC ¶ 24. Even now, Eames claims he was entitled to receive a share of royalties and revenue for some indefinite period. SAC ¶ 18. Eames' allegation of an agreement with no durational limit capable of calculation means that, whatever terms the Agreement may have had, it was "terminable at any time by either party with no liability for breach of contract." *Crew v. Imagine Sch., Inc.*, 2008 WL 5105073, at *2 (E.D. Mo. Dec. 1, 2008) (citation omitted) (dismissing breach of contract claim). As the entire basis of Eames' breach of contract claim is that Nile effectively terminated the Agreement by proceeding as a band without Eames (SAC ¶ 41), and as the Agreement was terminable at will based on Eames' own admissions, Eames' breach of contract claim must be dismissed, with prejudice. *See Young v. St. John's Mercy Health Sys.*, 2011 WL 9155, at *6 (E.D. Mo. Jan. 3, 2011) (where "the agreement does not contain any specific terms of duration[,]" "Plaintiff cannot assert a breach of contract claim.").

Nor does Eames' omission of his prior admission that Agreement was purportedly "permanent," or his new contradictory allegation that he was meant to tour through October 11, 2025 (SAC ¶ 17), save his claim.[3] Importantly, "it is well settled that a district court may ignore newly asserted facts where 'a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint.'" *Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, 2025 WL 35003, at *4 (S.D.N.Y. Jan. 6, 2025). So, despite Eames' apparent attempt to manufacture an end date after-the-fact, the Court need not disregard his prior admissions demonstrating why his breach of contract claim cannot stand. *See ecoNugenics, Inc. v. Bioenergy Life Sci., Inc.*, 355 F. Supp. 3d 785, 794 (D. Minn. 2019) ("ecoNugenics cannot simply delete damaging admissions from its

---

[3] Of course, even Eames' allegation that the last tour date was October 11, 2025 does not establish that the Agreement had a definite duration at the time it was allegedly entered into, as Eames still admits that the tour in question was not even announced until October 2023, nearly a year after the Agreement was allegedly formed in November 2022. SAC ¶¶ 11, 41.

9

complaint to render its claims plausible. The Court finds this proposed amendment futile and in bad faith."); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 14 (D.D.C. 2014) ("Where a plaintiff blatantly changes his statement of facts in order to respond to the defendants['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." (citation omitted)).

Further, even if Eames were to try to claim the Agreement did in fact have a definite term, it would run afoul of the statute of frauds, which mandates "that an oral contract for a definite period of time exceeding one year falls within the statute and is unenforceable unless some written memorandum sufficiently documents the contract to take it outside the statute of frauds." *Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208, 212 (8th Cir. 1989). Here, the admittedly oral Agreement[4] (to the extent it existed at all) at minimum contemplated that it would last through the Underworld tour (SAC ¶ 17), which Eames alleges was not even announced until October 26, 2023 (*id.*, ¶ 41), and which allegedly lasted until October 11, 2025 (*id.*, ¶ 17). Eames, however, alleges that the Agreement was entered into, at latest, November 2022 (*Id.*, ¶ 25), nearly a year before the tour was announced and three years before it allegedly ended. Whatever duration Eames may claim the Agreement had was thus certainly for more than a year, and thus barred by the statute of frauds.

Ultimately, despite multiple attempts to do so, Eames cannot properly state a claim for breach of contract against Nile – as no such contract ever existed.

---

[4] Even if Eames had not admitted the alleged Agreement was oral, "because [Nile] raised the statute of frauds defense in [its] motion to dismiss, Eames [is] required to affirmatively show the existence of an appropriate writing or an exception to this defense in order to avoid dismissal … ." *Casazza v. Kiser*, 313 F.3d 414, 418 (8th Cir. 2002); *see also Foam Supplies, Inc. v. The Dow Chem. Co.*, 2006 WL 2225392, at *11 (E.D. Mo. Aug. 2, 2006) ("Courts have consistently held that a plaintiff's failure to satisfy [the statute of fraud's] writing requirement is grounds for dismissal under Rule 12(b)(6)."). Further, the SAC's failure to identify whether the alleged Agreement was written or oral is itself a reason to dismiss Eames' breach of contract claim, particularly in light of Eames' failure to identify essential terms of the Agreement. *See Yoest v. Farm Credit Bank of St. Louis*, 832 S.W.2d 325, 329–30 (Mo. Ct. App. 1992) (no breach of contract claim stated where "[t]here is nothing in the pleading to show whether or not the alleged contract was oral or written, nothing to show the terms of the notes, the amounts involved or time period of the terms").

4913-0955-7110, v. 1

## III.    Eames Fails To State A Claim For Unjust Enrichment

For the first time in his SAC – and likely in recognition that there was no valid contract between Nile and Eames – Eames also now purports to assert a claim against Nile for unjust enrichment. Eames' unjust enrichment claim is based on his vague and conclusory allegations that his "performances of services under the Agreement for the creation and production of the Underworld album conferred a benefit to NILE" and that it "would be fundamentally unjust to permit NILE to benefit from Eames [*sic*] services without adequate consideration to Eames for the value of the benefit conferred." SAC ¶¶ 45, 47.

Under Missouri law, to establish an unjust enrichment claim, Eames must plausibly allege "that (1) he conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances. *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010). "Even if a benefit is 'conferred' and 'appreciated,' if no injustice results from the defendant's retention of the benefit, then no cause of action for unjust enrichment will lie." *Id.* In addition, "[t]here can be no unjust enrichment if the parties receive what they intended to obtain." *Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 293 (Mo. Ct. App. 2003).

Here, Eames' unjust enrichment claim fails for at least four reasons:  (i) Eames alleges the existence of a contract covering the same subject matter, (ii) Eames fails to allege that Nile appreciated the benefit of his alleged services, (iii) Eames has not alleged and cannot allege that Nile retained any benefit under inequitable or unjust circumstances, and (iv) the relief sought by Eames by his unjust enrichment claim is improper.

### A.    Eames Expressly Tethers His Unjust Enrichment Claim To His Alleged Agreement

Eames expressly alleges that the benefit he allegedly conferred upon Nile consisted of Eames' "performances of services ***under the Agreement***[.]" SAC ¶ 45 (emphasis added). But, under Missouri law, "if a 'plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights

11

4913-0955-7110, v. 1

are limited to the express terms of the contract.'" *Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) (quoting *Howard v. Turnbull,* 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). Here, Eames' unjust enrichment claim is expressly tethered to the alleged Agreement, and thus cannot stand.

> **B.      Eames Does Not (And Cannot) Allege That Nile Appreciated Any Benefit**

Eames fails to allege that Nile "appreciated" the benefit of any of Eames' alleged services. While Eames does vaguely allege that he collaborated on some unknown music or performed some undefined "guitar solo videos," he does not allege that any of these actions resulted in anything actually being used by Nile. Stated differently, at most, Eames only alleges (in conclusory terms) what he did; he does not allege how what he did actually conferred a benefit that was appreciated by Nile.

> **C.      Eames Cannot Allege That Nile Retained Any Benefit Under Unjust Circumstances**

In assessing the validity of an unjust enrichment claim, "[t]he most significant requirement is that the enrichment be unjust." *Am. Standard Ins. Co. of Wisconsin*, 103 S.W.3d at 291; *see also Muller v. Blue Diamond Growers*, 683 F. Supp. 3d 933, 940 (E.D. Mo. 2023) (granting motion to dismiss where the plaintiffs "have not plausibly alleged that it would be unjust to allow [Defendant] to retain the benefits … ."). Eames cannot satisfy this requirement here, for multiple reasons.

First, Eames' SAC once again attempts to contradict allegations from his prior pleading that are fatal to his claim for unjust enrichment. That claim is premised upon the services Eames contends he provided prior to his separation from Nile – *i.e.*, training a bassist, performing pre-production vocals, collaborating on music in some fashion, recording "guitar solo videos," and traveling to South Carolina. SAC ¶ 14. In his prior pleadings, however, Eames admitted he was compensated for these services. Eames expressly alleged that he "was paid to help train and prepare a new bassist" (FAC ¶ 26) and that, for his work after November 2022, he "received $850/week in compensation." *Id.*, ¶ 25. As previously stated, Eames cannot simply contradict –

12

in bad faith – prior allegations in an amended complaint just to avoid a motion to dismiss. *See supra*, at 9-10. And these allegations, which Eames cannot avoid, doom his unjust enrichment claim, because "[w]here a party has already paid for something, 'equity will not require [it] to pay twice.'" *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011) (citation omitted), *as corrected* (Aug. 4, 2011).

Second, even without considering the fatal admissions in his prior pleadings, Eames still has not alleged facts demonstrating that Nile unjustly retained any benefit from Eames' limited (alleged) services between November 2022 and October 2023. By his own allegations, Eames was performing with the band during that time, and doing things that would understandably be expected of a musician working with the band. Eames does not even allege that the contributions he allegedly made were utilized by Nile, must less in an unjust manner, or that those contributions even had any value whatsoever. Nor does Eames allege why he could not put this guitar solo videos or musical ideas to other uses. Absent facts demonstrating how Nile unjustly retained any benefit conferred by Eames (or that Nile even retained any benefit at all), his attempt to state a claim for unjust enrichment fails.

D.    Eames Seeks Relief That Is Not Available On A Theory Of Unjust Enrichment

Notably, the relief sought by Eames on his unjust enrichment claim is the very same as he seeks by his breach of contract claim – past and future tour compensation at a rate of $850/week, 1/3 of net album revenues, 1/3 of net royalties, and 1/3 of merchandise revenue – as well as "consequential damages in the form of lost personal advertising and endorsement revenue." SAC ¶¶ 43, 48. That relief, however, is unavailable to Eames under a theory of unjust enrichment. Rather, "[t]he measure of damages for an unjust enrichment claim is based upon the value of the benefit received by a defendant." *Hoffmeister v. Kranawetter*, 407 S.W.3d 59, 62 (Mo. Ct. App. 2013); *see also Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*, 844 S.W.2d 508, 516 (Mo. Ct. App. 1992) ("In the absence of fraud or other tortious conduct on the part of the party enriched, restitution is properly limited to the value of the benefit received."). The relief

13

requested by Eames has nothing to do with any benefit received by Nile. Eames admittedly did not perform on the Underworld tours, and cannot recover damages based on actions he never took. He also does not allege what any of his purported musical contributions even were or if they made it on the Underworld album, much less plausibly allege that they represented 1/3 of the value of that, and any future, albums. And his alleged lost personal advertising or endorsement opportunities – whatever he might think those are – have nothing to do with the value of any benefit he allegedly conferred upon Nile. Ultimately, Eames has not alleged that there was any actual value to any benefit received by Nile, and thus has not properly stated a claim for unjust enrichment. *Cf. Holmes v. Torguson*, 41 F.3d 1251, 1256–57 (8th Cir. 1994) (where plaintiff sought "relief that is not obtainable under the doctrine of unjust enrichment[,]" plaintiff's "unjust enrichment claim must be dismissed").

## IV.    Dismissal Should Be With Prejudice

Faced with Nile's prior motion to dismiss, Eames filed a motion seeking leave to amend his FAC in an attempt to cure the deficiencies raised in that motion. Doc. 69. However, despite that opportunity, Eames still fails to properly state a claim for relief. Given that prior opportunity, and this continuing failure to state a claim, dismissal now should be with prejudice. *Usenko on behalf of SunEdison Semiconductor Ltd. v. SunEdison Semiconductor LLC*, 2018 WL 999982, at *4 (E.D. Mo. Feb. 21, 2018), *aff'd sub nom. Usenko v. MEMC LLC*, 926 F.3d 468 (8th Cir. 2019) ("Because the Court has already permitted Plaintiff to amend his complaint once, and because Plaintiff has not explained the basis for his amendment or shown that such amendment would not be futile, the Court will deny Plaintiff's request for leave to amend.").

Further, "[p]roper justification for denying [a request to amend] includes: 'undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (citation omitted). Here, Eames has already demonstrated his bad faith in pursuing leave to amend, given his blatant attempt to assert contradictory factual

14

admissions in an attempt to overcome a motion to dismiss. *See ecoNugenics, Inc.*, 355 F. Supp. 3d at 794 (finding proposed amendment that "delete[d] damaging admissions from [the plaintiff's] complaint" to be "futile and in bad faith."). He should not be given another opportunity to do the same.

<strong><u>CONCLUSION</u></strong>

For the reasons stated herein, all of the claims stated against Nile in Eames' SAC should be dismissed, with prejudice.

DATED: October 31, 2025                    Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP
BRADLEY J. MULLINS

By:*/s/ Mary Ann L. Wymore*
    Bradley J. Mullins (*Pro Hac Vice*)
    bym@msk.com
    2049 Century Park East, 18th Floor
    Los Angeles, CA 90067
    (310) 312-2000 (phone)
    (310) 312-3100 (fax)

UB GREENSFELDER LLP
Mary Ann L. Wymore, MO # 44061
mwymore@ubglaw.com
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090 (phone)

(314) 241-8624 (fax)
*Attorneys for Defendant Karl Sanders p/k/a Nile*

<strong><u>CERTIFICATE OF SERVICE</u></strong>

The undersigned certifies that on this 31st day of October, 2025, the foregoing document was filed electronically by operation of the Court's electronic filing system and served on all counsel of record.

                              */s/ Mary Ann L. Wymore*

15